# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MATTHEW TYLER,
        **Plaintiff,**

v.                        **Case No. 03-C-0650**

JOHN BETT, CAPTAIN H. DeHAAN,
MICHAEL E. BECK, JOANNE M. BOVEE,
DAN WESFIELD,JOHN RAY,
and CINDY O'DONNELL,
        **Defendants.**

## DECISION AND ORDER

Plaintiff Matthew Tyler, who is currently incarcerated at the Wisconsin Secure Program Facility, filed this <u>pro se</u> civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff paid the full filing fee and was allowed to proceed on claims that his First, Eighth and Fourteenth Amendment rights were violated.[1] Specifically, he alleges that defendants (1) violated his Eighth Amendment rights by denying him exercise outside his cell during a period of segregation and forcing him to live in a cell infested by insects; (2) violated his Fourteenth Amendment right of access to the courts by denying him legal materials and photocopies, cancelling a law library pass, and opening legal mail outside his presence; and (3) violated his First Amendment rights by denying his request to purchase a Bible. He also alleges that he was subjected to retaliation for filing various complaints.

Before me is defendants' motion for motion for summary judgment. Defendants argue that (1) plaintiff failed to properly serve defendant Bovee, (2) plaintiff failed to

---

[1]Plaintiff's due process and official capacity claims were dismissed at screening.

exhaust his administrative remedies regarding several of his claims, (3) they did not violate plaintiff's Eighth Amendment rights by denying him exercise or forcing him to live in an infested cell, (4) they did not deny him access to the courts, and (5) they did not violate his free exercise rights by mistakenly denying his request for a Bible.

## I. BACKGROUND

On July 9, 2003, plaintiff lodged this civil rights complaint against John Bett, Captain DeHaan, Michael E. Beck, Donne M. Bonee,[2] Dan Westfield, John Ray, and Cindy O'Donnell, all employees of the Wisconsin Department of Corrections ("DOC"). At all times relevant to this action, plaintiff was incarcerated at Dodge Correctional Institution ("DCI"), Bett was the warden at DCI, DeHaan a Supervising Officer 2 at DCI, and Beck and Bovee Institution Complaint Examiners at DCI. Ray was the Corrections Complaint Examiner for the DOC, and O'Donnell was the DOC Deputy Secretary.[3]

I administratively closed this case from May 20 to June 7, 2004, to allow plaintiff time to receive relevant legal materials. Defendants filed a motion for summary judgment on September 27, 2004. On December 21, 2004, and January 20, 2005, plaintiff was given additional time to respond to defendants' motion. Plaintiff, who proceeds pro se, was also provided with the notice required by Fed. R. Civ. P. 56 and Civ. L.R. 7.1, 56.1 and 56.2 (E.D. Wis.). Accordingly, plaintiff has been given notice and a fair opportunity to present counter-affidavits or other evidence in opposition to defendants' motion.

_____

[2]Plaintiff later filed a motion to correct the name of defendant Donne M. Bonee to "Joanne M. Bovee."

[3]Plaintiff's only claim against Westfield, who was the Security Director at DCI, was dismissed in the screening order. Therefore, Westfield is dismissed from the action.

2

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party."  Id.  For the fact to be material, it must relate to a dispute that "might affect the outcome of the suit."  Id.

The moving party bears the initial burden of demonstrating that it is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party may satisfy its initial burden by pointing that there is an absence of evidence supporting the non-moving party's claims.  Id. at 325.  Once the moving party's initial burden is met, the non-moving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a genuine issue for trial.  Id. at 323-24.  Neither party may rest on mere allegations or denials in the pleadings, Anderson, 477 U.S. at 248, or upon conclusory statements in affidavits, Palucki v. Sears, Roebuck & Co., 879 F.2d 1568, 1572 (1989).

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  However, it is "not required to draw every conceivable

3

inference from the record - only those inferences that are reasonable." <u>Bank Leumi Le-Israel, B.M. v. Lee</u>, 928 F.2d 232, 236 (7th Cir. 1991).

## III. FACTS

**A. Eighth Amendment Claims**

**1. Denial of Physical Exercise**

On April 17, 2001, plaintiff was sentenced to eight days adjusted segregation, a sentence her served until April 25. (Affidavit of John E. Bett [Bett Aff.] at 2 ¶ 5; Bett Aff. Ex. A at 3.) On April 21, 2002, he filed Inmate Compaint DCI-2001-11946, alleging that under DOC § 309.69(9), he should be allowed to exercise outside of his cell at least once during his eight-day adjusted segregation sentence. (Bett Aff. at 2 ¶ 9.) On April 23, 2001, defendant Bovee recommended that the complaint be dismissed with modification. (Bett Aff. at 3 ¶ 12 .) Defendant Bovee stated:

> Based on the facts as presented, I recommend this complaint be dismissed with modification. The DOC 303.69(9) appears to be written somewhat confusing in relation to past DOC 303s. A recommendation is being made for this section to be discussed at the next Wardens' Meeting in order to have the section rewritten for better interpretation.

(Bett Aff. at 3 ¶ 12.)

Plaintiff requested review of Bovee's decision on May 5, 2001. (Affidavit of John Ray [Ray Aff.] Ex. A at 7.) On May 23, 2001, defendant Ray stated that after reviewing DOC § 303.69(9), the Office of Legal Counsel agreed that plaintiff should be allowed to exercise outside his cell at least once every eight days. (Ray Aff. at 3 ¶ 9.) On June 30, 2001, defendant O'Donnell accepted Ray's recommendation as the decision of the Secretary. (Affidavit of Cindy O'Donnell [O'Donnell Aff.] at 2 ¶ 6.)

4

### 2. Insect Infestation

On May 8, 2001, plaintiff filed Inmate Complaint DCI-2001-13684, alleging that for the past three weeks he had "attempted to get someone to rid my sink of 'water fleas.'" (Affidavit of Michael E. [Beck Aff.] Ex. B at 1.) On May 9, 2001, defendant Beck recommended that the complaint be dismissed. (Beck Aff. at 3 ¶ 11.) The dismissal stated

> Without actually seeing the bug, the ICE would assume the "water fly" is actually a fruit fly or a gnat. Such insects will invariably gravitate to areas where there is food. If cells are not kept clean and free of perishables, insects will be present. Inmates in the Adjustment Center are given the opportunity at least twice a week to clean their cells. If they refuse to clean them, they reap the consequences. In response to this complaint, the ICE contacted Mr. Gregory, Superintendent of Buildings and Grounds, who indicated he would have a staff member go to the unit to look into the allegation and take corrective action if necessary.

(Beck Aff. at 3 ¶ 11.)

On May 17, 2001, plaintiff requested review of Beck's dismissal, claiming that he did not have food in his sink and that he had never refused to clean his cell. (Ray Aff. Ex. B at 6.) On June 22, 2001, defendant Ray recommended that the complaint be dismissed as moot because plaintiff had been moved to a different unit and because a professional exterminator had since visited the institution. (Ray Aff. at 8 ¶ 35.)

On July 7, 2001, plaintiff filed Inmate Complaint DCI-2001-19875, complaining of flying insects in his cell and a live worm crawling in his sink. (Beck Aff at 4 ¶ 16; Beck Aff. Ex. C at 1.) On July 10, 2001, defendant Bovee rejected the complaint because the problem had been addressed in plaintiff's previous complaint, and because Orkin (pest control) would be coming the next day. (Beck Aff. at 4 ¶ 17; Beck Aff. Ex. C at 3.)

5

**B.     Fourteenth Amendment Denial of Access to Courts Claim**

**1.     Access to Legal Directory**

On May 13, 2001, plaintiff filed Inmate Complaint DCI-2001-14081, complaining that he did not have access to the 2000 Wisconsin Legal Directory.  (Beck Aff. at 5 ¶ 24; Beck Aff. Ex. D at 1.) Plaintiff stated:

> On 4-30-01 I made a request to the library to use the Milwaukee Area Yellow Pages to search for Attorneys.  They informed me that I should use the '2000 Wisconsin Legal Directory' which is part of the U-18 adjustment center Law Library and the Legal Directory was not there.  I contacted the Library again and told them the Legal Directory was not there. On 5-8-01 I made another inquiry with the U-18 staff about finding '2000 Wisconsin Legal Directory.' They said they would look for it.  I made the same request on 5-10-01 and 5-11-01.  As of today I do not have access to the Legal Directory.  Time is of the essence.  I do not have another two weeks to lose in finding an attorney.

(Beck Aff. at 5 ¶ 24.)

On May 14, 2001, defendant Beck recommended that the complaint be affirmed with modification.  (Beck Aff. 6 at ¶ 27; Beck Aff. Ex. D at 4.)  After interviewing several DCI staff members and not recovering the volume, Librarian Lungren (who is not a party to this action) told defendant Beck that he would provide plaintiff with a copy of the 1999 edition. (Beck Aff. at 6 ¶ 29; Beck Aff. Ex. D at 4.) Beck recommended that another 2000 Wisconsin Legal Directory be ordered if the original could not be located.  (Beck Aff. 6 at ¶ 29; Beck Aff. Ex. D at 4.)

**2.     Opening of Legal Mail**

On June 3, 2001, plaintiff filed Inmate Complaint DCI-2001-16187, complaining that his legal mail was opened outside his presence.  (Beck Aff. at 7 ¶ 34; Beck Aff. Ex. E at 1.)  The mail at issue consisted of letters plaintiff had written to two lawyers, which was

6

returned to him. On June 4, 2001, defendant Beck recommended that the complaint be dismissed because the mail was technically considered inmate to inmate mail, and thus was no longer exempt from being opened outside plaintiff's presence by mailroom staff. (Beck Aff. at 9 ¶ 39; Beck Aff. Ex. E at 3.)

### 3. Library Pass

On June 11, 2001, plaintiff filed Inmate Complaint 2001-DCI-17150, complaining that he had not been told that he had a library pass and that because of the delay in getting to the library he would be one week behind in filing a petition for certiorari. (Beck Aff. at 9 ¶ 43; Beck Aff. Ex. E at 1.) On June 12, 2001, defendant Beck recommended that the complaint be dismissed. (Beck Aff. at 11 ¶ 48). Beck stated:

> Investigation reveals the inmate not only had a Law Library pass at 8:30 AM sent to his unit for 6-11-01, but also a Library pass for 9:30 AM, neither of which he honored. Officers R. Barton and R. DeHaan were both assigned to Unit 20 on 6-11-01. Officer R. Barton indicated the inmate had been notified at breakfast of his passes but chose to go outdoors for recreation instead of honoring his passes. Mr. Hession stated the inmate does have an active request on file for these areas and is scheduled to receive a pass to the Law Library again this week. I suggest that if the inmate is currently working on legal matters, he go on his pass instead of recreation in the future.

(Beck Aff. at 11 ¶ 48.)

### 4. Photocopies

On July 6, 2001, plaintiff filed Inmate Complaint DCI-2001-19876, alleging that he was denied copies of an inmate's disciplinary hearing testimony. (Beck Aff. at 12 ¶ 51; Beck Aff. Ex. G at 1.) On July 9, 2001, defendant Bovee recommended that the complaint be dismissed because plaintiff did not send along with his request for copies the document that he wished to have copied. (Beck Aff. at 12 ¶ 53; Beck Aff. Ex. G at 2-3.)

7

### 5. The Underlying Action Allegedly Affected

Plaintiff claims that because of defendants' interference, as detailed above, he was prevented from timing filing a petition for certiorari review of a prison disciplinary action. See State ex rel. Tyler v. Bett, 257 Wis. 2d 606 (Ct. App. 2002). Plaintiff submitted his petition to the state circuit court within the time allowed by statute, but it was returned to him because he had not included the proper filing fee or copies of certain documents pertaining to the DOC decision he wished to be reviewed. Id. at 610. By the time he was able to collect the documents and forward the proper fee, the time for filing had lapsed, and the circuit court rejected the petition as untimely. Id. The state court of appeals affirmed, holding that the so-called "mail box rule" – which deems an inmate's submission "filed" when it is placed in the institution's mailbox – applied only when the inmate deposits a proper petition. Defects in the filing, such as failure to include the proper filing fee, may nonetheless result in rejection of the petition. Id. at 615. Because petitioner's initial submission, which was timely submitted, suffered from such defects, his corrected submission filed out of time was properly dismissed. Id. at 616. Finally, the court declined to consider whether prison officials' failure to assist plaintiff contributed to the defective filing, holding that such claims were properly addressed to the Inmate Complaint Review System. Id. at 618.

Plaintiff later filed a habeas corpus action challenging the prison discipline at issue. In that case, I declined to dismiss the petition based on procedural default, i.e. plaintiff's failure to timely petition the circuit court for certiorari review. Tyler v. McCaughtry, 293 F. Supp. 2d 920 (E.D. Wis. 2003). Instead, I addressed the petition on the merits, finding that the disciplinary action was supported by the evidence and that prison officials did not

8

violate plaintiff's due process rights in their conducting of the disciplinary hearing. <u>Tyler v. McCaughtry</u>, No. 03-C-514 (E.D. Wis. Dec. 3, 2004) (Decision and Order Dismissing Case).

**C.    First Amendment Claim: Denial of Request for Bible**

On May 12, 2001, plaintiff submitted a Disbursement Request for a Bible, which was denied by non-party Capt. Waltz. (Beck Aff. at 15 ¶ 64.) On May 16, 2001, plaintiff filed Inmate Complaint DCI-2001-14583, complaining about his Bible request disapproval. (Beck Aff. at 14 ¶ 59; Beck Aff. Ex. H at 1.) After interviewing DCI staff, defendant Bovee found that the disapproval was a mistake. (Beck Aff. at 15 ¶ 63; Beck Aff. Ex. H at 4.) Capt. Waltz denied plaintiff's request because he thought it was an order for a book. (Beck Aff. Ex. H at 4.) Bovee instructed plaintiff to re-submit his request. (Beck Aff. at 15 ¶ 64; Beck Aff. Ex. H at 4.)

**IV.  DISCUSSION**

**A.    Service on Defendant Bovee**

Defendants first argue that defendant Bovee should be dismissed because she was not properly served under Fed. R. Civ. P. 4. As noted, plaintiff was originally allowed to proceed against defendant "Donne Bonee." "Donne Bonee" has since been correctly identified as "Joanne M. Bovee." Defendants state that plaintiff has provided no proof that defendant Bovee has been served with a summons and complaint in this matter. Plaintiff contends that he was prevented from acquiring defendant Bovee's home address, that he attempted to serve process on Bovee at her workplace, and that mail addressed to Bovee at DCI had previously been accepted.

9

Unless he is proceedings in forma pauperis, the plaintiff is responsible for effecting service on the defendants. See Byrd v. Stone, 94 F.3d 217, 219 (6th Cir. 1996). In the present case, the court provided plaintiff, who paid the full filing fee, with instructions about serving defendants, as well as the actual service forms. Waiver of service was returned executed for all defendants except Bovee.

In a November 19, 2003 letter to the court, plaintiff claims that he sent a package to defendant Bovee at DCI, but that he was unable to serve process on her there. However, plaintiff has not submitted evidence that he tried to serve Bovee through her attorney, Assistant Attorney General Hoel, even though Hoel executed service for the other six defendants. "Although civil litigants who represent themselves ('pro se') benefit from various procedural protections not otherwise afforded to the attorney-represented litigant . . . pro se litigants are not entitled to a general dispensation from the rules of procedure or court-imposed deadlines." Downs v. Westphal, 78 F.3d 1252, 1257 (7th Cir. 1996). Plaintiff has presented no good reason for his failure to serve Bovee. Accordingly, defendants' motion to dismiss Bovee from the action is granted.

**B.    Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act of 1995 ("PLRA"), Pub.L. 104-134, 110 Stat. 1321 (1996), provides in pertinent part that

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is a condition precedent to suit. Dixon v. Page, 291 F.3d 485, 488 (7th Cir. 2002) (citing Perez v. Wis. Dep't of

Corrections, 182 F.3d 532, 535 (7th Cir. 1999)).   To exhaust the available administrative remedies, the prisoner must take all steps required by the institution's grievance system, in the manner prescribed by the institution's rules.   See, e.g., Strong v. David, 297 F.3d 646, 649-50 (7th Cir. 2002); Pozo v. McCaughtry, 286 F.3d 1022, 1023 (7th Cir. 2002). Defendants contend that plaintiff has not fully exhausted (1) his denial of access to the courts claim, (2) his retaliation claim, and (3) his second pest infestation claim as stated in Inmate Complaint DCI-2001-19875.

Wisconsin provides an inmate complaint review system ("ICRS") to allow inmates in adult correctional institutions to raise complaints about prison rules, living conditions, and staff actions.   See Wis. Admin. Code §§ DOC 310.01, 310.03.   For an inmate to exhaust his administrative remedies within Wisconsin prisons, he must file a complaint with the Inmate Complaint Examiner ("ICE") within 14 days after the occurrence giving rise to the complaint.   Wis. Admin. Code § DOC 310.09(3).   Inmate complaints submitted later than 14 days after the event may be accepted for good cause.   Id.   The ICE then investigates the complaint and makes a recommendation to the warden who issues a decision.   Wis. Admin. Code §§ DOC 310.11, 310.12, 310.03(3).   Within five days of receiving the warden's decision, the inmate may appeal an adverse decision to the Corrections Complaint Examiner ("CCE"), who investigates and makes a recommendation to the Secretary of the DOC.   Wis. Admin. Code § DOC 310.13.   The Secretary of the DOC may adopt or reject the recommendation.

### 1.    Denial of Access to the Courts Claim

Defendants contend that plaintiff did not exhaust administrative remedies regarding his denial of access to the courts claim because plaintiff did not file an ICRS Offender

11

Complaint on the issue of Capt. DeHaan cancelling his law library pass. In Inmate Complaint DCI-2001-17150, plaintiff alleged that Capt. DeHaan did not inform him that he had a law library pass. Plaintiff exhausted this complaint. However, defendants point out that in this court plaintiff complains that his law library pass was canceled. Thus, they contend that he is presenting different claim from the one he exhausted.

Defendants ask too much. As the Seventh Circuit has noted, unless the institution demands greater detail pursuant to prison rules, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. As in a notice-pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming." Strong, 297 F.3d at 650. Defendants have not shown that plaintiff's complaint failed to comply with DOC rules, or that it was otherwise incomprehensible. Moreover, viewing the matter in a light most favorable to plaintiff, as I must at this stage, it is possible that DeHaan's failure to inform plaintiff of the pass caused it to be cancelled. Thus, summary judgment cannot be granted on this basis.

### 2. Retaliation Claim

Defendants also contend that plaintiff did not exhaust administrative remedies with respect to his retaliation claim. Allegations that prison officials retaliated against an inmate for the inmate's exercise of his First Amendment rights constitute allegations concerning "prison conditions" under the PLRA, requiring exhaustion before filing a § 1983 action in federal court. Johnson v. Litscher, 260 F.3d 826, 828 (7th Cir. 2001). Plaintiff filed no ICRS complaint alleging that defendants retaliated against him. Thus, plaintiff has not

12

exhausted this claim, and I must dismiss it.

### 3. Pest Infestation as Stated in Inmate Complaint DCI-2001-19875

Defendants contend that plaintiff did not exhaust Inmate Complaint DCI-2001-19875, in which plaintiff renewed his complaint of flying insects in his cell and a live worm crawling in his sink. Prison officials dismissed this complaint as moot/resolved, and plaintiff did not appeal. (Beck Aff. at 20.) However, a prisoner is not required to exhaust consecutive complaints on the same issue as long as prison officials are sufficiently aware of the problem. See Greeno v. Daley, 414 F.3d 645, 652 (7th Cir. 2005). As plaintiff's second "water flea" complaint raises the same issues addressed in his first complaint, which plaintiff did exhaust, he was not required to go through the entire process again. Therefore, I may address plaintiff's infestation claims on the merits.

I turn now to the merits of the claims plaintiff exhausted.

### C. Eighth Amendment Claims

The Eighth Amendment forbids prison conditions that are cruel and inhumane. In order to prevail on such a claim, the inmate must demonstrate that (1) he suffered a "sufficiently serious" deprivation and (2) prison officials acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991). The first element requires a showing that the inmate was deprived of the minimal civilized measure of life's necessities, and the second that officials acted out of obduracy or wantoness rather than inadvertence or good faith mistake. Id. at 298-99.

### 1. Denial of Physical Exercise Claim

Plaintiff alleges that he was subjected to cruel and unusual punishment when he

13

was not allowed to exercise outside of his cell during his eight-day stay in adjusted segregation. Although the Constitution does not mandate any minimum period of out-of-cell exercise, the Eighth Amendment may be violated "where movement is denied and muscles are allowed to atrophy [and] the health of the individual is threatened." French v. Owens, 777 F.2d 1250, 1255 (7th Cir. 1985); see also Delaney v. DeTella, 256 F.3d 679, 683 (7th Cir. 2001) ("Given current norms, exercise is no longer considered an optional form of recreation, but is instead a necessary requirement for physical and mental well-being."). However, the Seventh Circuit has noted that short term denials of exercise "may be inevitable in the prison context and are not so detrimental as to constitute a constitutional deprivation." Delaney, 256 F.3d at 683-84.

In the present case, plaintiff was prevented from exercising outside his cell from April 17 to April 25, 2001, the duration of his adjusted segregation sentence. (Bett Aff. at 4 ¶ 6). However, his cell was large enough so that he had enough room to run in place and perform other exercises (Bett Aff. at 4 ¶ 18), and it is undisputed that plaintiff did exercise in his cell between April 17 and April 25, 2001 (Affidavit of Matthew Tyler [Tyler Aff.] at 5 ¶ 24-26). The Seventh Circuit has held that short term limits on out-of-cell recreation do not rise to the level of a constitutional violation, see, e.g., Shelby County Jail Inmates v. Westlake, 798 F.2d 1085, 1089 (7th Cir. 1986) (ten days), and that an inmate's ability to exercise within his cell during a short-term stay in segregation likewise defeats an Eighth Amendment claim, Harris v. Fleming, 839 F.2d 1232, 1236 (7th Cir. 1988).

Plaintiff claims that it took prison officials from April 21 to June 30, 2001, to acknowledge that he should have been allowed to exercise outside his cell. However, plaintiff was not prevented from exercising outside his cell during this time. Plaintiff filed

14

his inmate complaint on April 21, 2001, and on June 30, 2001 defendant O'Donnell made a final decision on it.  But by that date, plaintiff had long since been released from adjusted segregation.

Plaintiff also alleges that he has high blood pressure and high cholesterol, that exercise is vital to controlling those conditions, and that he had pain and swelling in his knee as a result of doing in cell exercises.  However, he presents no evidence that the named defendants were aware of his conditions and nevertheless wantonly denied him out-of-cell exercise.  Nor does he cite any cases holding that those with certain medical conditions must receive special dispensation to exercise.  Finally, there is no evidence that plaintiff's knee swelling was caused by the necessity that he exercise within his cell.  In sum, plaintiff has failed to demonstrate that he suffered a sufficiently severe deprivation or that defendants acted with a culpable state of mind in regard to this claim.

### 2. Inadequate Sanitation Claim

Plaintiff alleges that defendants Beck, Bett, Ray and O'Donnell were deliberately indifferent to allegations that his cell was infested with "water fleas."  Defendants contend that they were first alerted to plaintiff's pest infestation claim in his inmate complaint, and that they acted reasonably once they were apprised of the situation.

Pest infestations, if sufficiently serious, can violate the Eighth Amendment.  See, e.g., Antonelli v. Sheahan, 81 F.3d 1422, 1431 (7th Cir. 1996); Harris, 839 F.2d at 1234-1236.  However, plaintiff's claim falls short.

Plaintiff's insect problem lasted less than one month and consisted of water fleas collecting in the sink.  In his May 8, 2001 inmate complaint, plaintiff stated that he wanted to "get someone to rid my sink of water fleas."  (Beck Aff. Ex. B at1.)  On May 9, 2001,

15

defendant Beck advised plaintiff to clean his cell of any perishables and informed plaintiff that the Superintendent of Grounds would look into the problem. On May 17, 2001, plaintiff stated that he had cleaned his cell but the bug problem persisted. It is undisputed that plaintiff was moved from his cell on or about June 1, 2001. (Ray Affidavit ¶ 30, Ex. B at 1, 3, 5-7.) Defendant Ray dismissed the complaint on June 22, 2001 because a professional exterminator had come to visit and plaintiff had been moved to another unit. Thus, the evidence shows that the insect problem was not severe, that it lasted for less than one month, and that defendants responded to it.

However, in response to defendants' motion, plaintiff elaborates on his original complaint, claiming that insects crawled in his food, were all over his body and his face when he drank water, that he lost 20 pounds, and that he was diagnosed with Helicobater pylori, a stomach bacteria that results from unsanitary conditions. (Pl.'s Br. in Resp. to Summ. J. Mot. at 7). Even if these allegations are true,[4] and even if they demonstrate a more serious problem, plaintiff still cannot show that defendants acts with a sufficiently culpable state of mind.

Prison officials cannot be found liable on a deliberate indifference claims where they responded reasonably to an alleged risk, even if the harm was not averted. Farmer v. Brennan, 511 U.S. 825, 844 (1994). Defendants Beck (Beck Aff. at 2 ¶ 7), Bett (Bett Aff. At 5 ¶ 22), Ray (Ray Aff. at 7 ¶ 28), and O'Donnell (Affidavit of Cindy O'Donnell [O'Donell Aff.] at 6 ¶ 27) first learned of plaintiff's problem with insects when they reviewed his inmate complaint. When defendant Beck received the complaint, he advised plaintiff to clean his

---

[4]These allegations may be sufficiently far afield from those raised in plaintiff's ICRS complaint such that it would be improper to allow plaintiff to raise them now.

16

sink and requested that the Superintendent of Grounds look into the problem. Defendant Bett affirmed Beck's decision because it seemed like a reasonable recommendation, particularly where there was no allegation of health problems. (Beck Aff. at 6 ¶ 26.) Defendant Ray dismissed the complaint because a professional exterminator had come to visit and plaintiff had been moved from his unit. (Ray Aff. Ex. B at 9.) Defendant O'Donnell received the complaint on June 30, 2001, and accepted Ray's decision because plaintiff had been transferred, a pest exterminator had visited DCI, there were no allegations of health problems, and Beck's recommendation seemed to be a reasonable resolution of the problem. (O'Donnell Aff. at 7 -8 ¶ 33-34.)

While it may be true that plaintiff was forced to live with water fleas in his sink, defendants acted reasonably in attempting to correct the problem. "Inmates cannot expect the amenities, conveniences and services of a good hotel." Harris, 839 F.2d at 1235-36. Thus, plaintiff's inadequate sanitation claim must be dismissed.

### D.    Access to Courts Claim

Prisoners have a constitutional right to meaningful access to the courts to pursue post-conviction remedies and to challenge the conditions of their confinement. Bounds v. Smith, 430 U.S. 817, 821-22 (1977). In order to prevail on a claim of denial of access, the plaintiff must show not just interference with his ability to communicate with a court, but also that he suffered "actual injury." Lewis v. Casey, 518 U.S. 343, 348-49 (1996). Actual injury includes, but is not necessarily limited to, prejudice to contemplated or existing litigation, such as a plaintiff's missing a filing deadline or being foreclosed from presenting a certain claim to the courts. Id. at 351. In addition, a claim for denial of access to the courts must involve intentional interference; negligent conduct by a government official is

17

insufficient to support a claim under § 1983.  Harrell v . Cook, 169 F.3d 428, 432 (7th Cir. 1999).

Plaintiff alleges that defendants interfered with his access to the courts in several ways, causing his certiorari petition to be dismissed as untimely.  I address each alleged interference in turn.

### 1.    Denial of legal materials

Plaintiff alleges that defendants Beck and Bett denied him access to the 2000 Wisconsin Lawyer Directory, which delayed plaintiff's search for an attorney, and ultimately caused his petition for certiorari to be rejected as untimely.  Defendants contend that they are not personally responsible for providing books to inmates, and that they made reasonable efforts to provide the volume to plaintiff.

Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation.  Vance v. Peters, 97 F.3d 987, 991 (7th Cir. 1996).  The doctrine of respondeat superior does not apply to actions filed under 42 U.S.C. § 1983.  See Pacelli v. DeVito, 972 F.2d 871, 877 (7th Cir. 1992).  Although direct participation is not necessary, there must at least be a showing that the defendants acquiesced in some demonstrable way in the alleged constitutional violation.  Kelly v. Mun. Courts of Marion Cty., 97 F.3d 902, 909 (7th Cir. 1996); Rascon v. Hardiman, 803 F.2d 269, 274 (7th Cir. 1986).  To prevail on his claim, plaintiff must establish that defendants Beck and Bett were in some way personally responsible for the alleged deprivation, and that the deprivation occurred with the knowledge and consent of defendants.

In the course of their duties, defendants Bett (Bett Aff. at 6 ¶ 31) and Beck (Beck

18

Aff. at 5 ¶ 22) are not personally responsible for providing legal materials to DCI inmates. However, Beck interviewed DCI librarians and staff in an effort to track the book down. (Beck Aff at 5 ¶ 23.) When Beck discovered that the volume was missing, he relied on Librarian Lungren's assurance that plaintiff would receive the 1999 edition in a prompt manner. (Beck Aff. at 7 ¶ 30.)

Defendant Bett first learned of plaintiff's problem with obtaining the book when he received plaintiff's inmate complaint. (Bett Aff. at 7 ¶ 32.) He affirmed Beck's decision because it was reasonable in light of the librarian's assurance that plaintiff would get the 1999 edition. Supervisory responsibility of a warden is not sufficient to establish personal liability for an isolated failure of a subordinate to carry out prison policies, unless the subordinate acted or failed to act based on the his instructions. Steidl v. Gramley, 151 F.3d 739, 741 (7th Cir. 1998).

Plaintiff has not established that Beck and Bett were personally responsible for providing him legal materials, or that defendants consented to the deprivation of plaintiff's constitutional rights. In light of the foregoing, plaintiff's claim must be dismissed.

### 2. Opening of Legal Mail

Plaintiff alleges that as part of the continuous harassment and retaliation against him, his legal mail was opened outside his presence. Defendants contend that plaintiff's mail was opened because it appeared to be "inmate mail," and that defendants Beck, Bett, Ray and O'Donnell were not personally responsible for mailroom operations.

Prisoners have a right to be free from certain interference with their legal mail. Specifically, mail between an inmate and his counsel is protected by the Sixth Amendment. Wolff v. McDonnell, 418 U.S. 539, 577 (1974). To guard against the chilling of an inmate's

access to the court, legal mail may only be inspected in the presence of the inmate to ensure that it is not read by prison officials.  Id.; Gaines v. Lane, 790 F.2d 1299, 1306 (7th Cir. 1986); Bach v. People of the Sate of Illinois, 504 F.2d 1100, 1102 (7th Cir. 1974).  However, prison officials need not open legal mail in an inmate's presence unless it is clearly marked as such.  The Court in Wolff explained:

> If prison officials had to check in each case whether a communication was from an attorney before opening it for inspection, a near-impossible task of administration would be imposed.  We think it entirely appropriate that the State require any such communications to be specially marked as originating from an attorney, with his name and address being given, if they are to receive special treatment.

Id. at 576.

In Martin v. Brewer, 830 F.2d 76, 77 (7th Cir. 1987), the court addressed a federal prison's practice under the regulations of treating all incoming mail as general correspondence which the prison can open and read before delivering to the inmate, unless the envelope is marked "Special Mail - Open only in the presence of the inmate." "Special Mail," under 28 C.F.R. § 540.2(c) includes correspondence received from an inmate's attorney, mail from the courts, and mail from public officials.  Id.  Concerning correspondence from an inmate's attorney, the court stated:

> To assist the prison personnel in determining whether such mail should be treated as special mail, the regulations require as we noted earlier that the prisoner advise his attorney to place the special legend on the envelope. This requirement is easy to comply with and therefore presents no serious constitutional question; the cost of compliance being essentially zero, the restriction on free speech is trivial; so is the restriction on the inmate's access to the courts.

Id. at 78.  Thus, incoming mail from an attorney may be opened out of an inmate's presence before delivery unless it bears such a warning.  Id.

20

Wisconsin Administrative Code § DOC 309.04 provides prisoners with greater privacy concerning incoming legal mail than is required by the United States Constitution. Under § 309.04, "legal mail" is mail that is clearly identifiable as being from one or of the following parties: 1) an attorney; 2) the Governor of Wisconsin; 3) members of the Wisconsin Legislature; 3) members of the United States Congress; 5) the Secretary of the DOC; 6) the Administrator of the Division of Adult Institutions; 7) the Attorney General or an Assistant Attorney General of Wisconsin; 8) an investigative agency of the federal government; 9) the clerk or judge of any state or federal court; or 9) the President of the United States.  Wis. Admin Code § DOC 309.04(3). All mail that does not fall under the above categories will be opened and inspected by institution mailroom staff.  Id.

Plaintiff's letters to two attorneys, neither of whom represented plaintiff, were returned to DCI for having the wrong address.[5]  Upon return to DCI, the letters appeared to have been sent from the institution by an inmate and returned to the institution for an inmate.  As such, they were considered inmate to inmate mail, as opposed to legal mail. Thus, I find no intentional violation of plaintiff's rights in the opening of these letters.

Further, defendants Beck (Beck Aff. at 33), Bett (Bett Aff. at 44), Ray (Ray Aff. at 36), and O'Donnell (O'Donnell Aff. at 35), do not personally process inmate mail or supervise the delivery and sending of inmate mail.  None of these defendants opened the mail plaintiff complains about. (Beck Aff. at 8 ¶ 37, Bett Aff. at 9 ¶ 44, Ray Aff. at 9 ¶ 40, O'Donnell Aff. at 8 ¶ 39.)  Absent personal involvement, plaintiff's claims against these

_____

[5]Apparently, these letters were designed to obtain representation on the certiorari matter.

21

defendants fail.[6]

### 3. Law Library Pass

Plaintiff claims that defendant DeHaan violated his right of access to the courts by cancelling his library pass, and that defendants Beck, Bett, Ray and O'Donnell are liable because of their handling of plaintiff's inmate complaint. Defendant DeHaan denies that he failed to tell plaintiff about his library pass, and defendants Beck, Bett, Ray and O'Donnell assert that they are not personally responsible for providing law library passes to inmates.

Courts often "equate access to prison law libraries with the degree of access to the courts, which prisoners have, heretofore, been constitutionally guaranteed." Hossman v. Spradlin, 812 F.2d 1019, 1021 (7th Cir. 1987). However, a prisoner's right of access to courts is not unconditional. See Caldwell v. Miller, 790 F.2d 589, 606 (7th Cir. 1986). The constitutionally relevant benchmark is meaningful, not total or unlimited access. Id. "Meaningful" access requires "that they receive that quantum of access to prison libraries–not total or unlimited access-which will enable them to research the law and determine what facts may be necessary to state a cause of action." Id. Further, an allegation of delay of the prisoner's litigation is not enough to state a claim. Gentry v. Duckworth, 65 F.3d 555, 559 (7th Cir. 1995). Finally, plaintiff must establish intentional interference; negligent conduct is insufficient to support a claim under § 1983. Harrell, 169

---

[6]Plaintiff alleges that the letters were returned to DCI because plaintiff did not have the 2000 Wisconsin Legal Directory. Regardless of the reason for error, the letters appeared to be inmate to inmate mail. Unopened incoming mail from an inmate source could contain threats to security such as escape plans, gang communications and contraband drugs or weapons. (Beck Affidavit ¶ 39, Bett Affidavit ¶ 50, Ray Affidavit ¶ 42, O'Donnell Affidavit ¶ 40.)

22

F.3d at 432.

Plaintiff has shown that his certiorari petition was rejected as untimely. However, he has failed to present evidence that defendants' intentional interference with his access to the law library caused that rejection. First, plaintiff indicated in his inmate complaint that his reason for going to the library was to type. But there is no requirement that certiorari petitions be typed. Second, plaintiff has not shown that his inability to visit the library on this single occasion caused his petition to be dismissed. Rather, the evidence shows that the petition was rejected in part because he did not include the proper filing fee. Third, the evidence suggest that it was not Captain John DeHaan (a defendant in this action) who was involved in this issue, but rather another "Officer DeHaan." Defendant Captain DeHaan denies that he interfered with plaintiff's access to the library. (Affidavit of John C. DeHaan [DeHaan Aff.] at 2 ¶ 3). Moreover, investigation by defendant Beck revealed that non-party Officer Barton, who was assigned to plaintiff's unit at the time the passes were available, knew that plaintiff had been notified at breakfast of his passes but chose to go to recreation instead. (Beck Aff. at 11 ¶ 48.) Plaintiff argues that dismissal of his complaint was unreasonable in light of these facts. However, plaintiff has not submitted evidence to establish that Beck did not proceed in a proper manner. (Plaintiff's Response to Defendants' Proposed Findings of Fact ¶ 115).

Finally, in the regular course of their duties, defendants Beck (Beck Aff. at 9 ¶ 42), Bett (Bett Aff at 11 ¶ 53), Ray (Ray Aff. at 11 ¶ 46), and O'Donnell (O'Donnell Aff. at 9 ¶ 44) do not personally issue or cancel law library passes for DCI inmates, including plaintiff. Therefore, the personal involvement requirement necessary to establish liability has not been met. Accordingly, plaintiff's claim must be dismissed.

23

**4.     Denial of Photocopying Services**

Plaintiff claims he was denied access to the courts when he was not provided with copies of documents he wanted to include with his certiorari petition.  Defendants contend that  plaintiff did not send a copy of the document to the Records Office when he requested copies, and that they are not personally responsible for providing copies to DCI inmates.

To make a claim under § 1983 concerning denial of photocopying, a prisoner must "show that the denial prevented him from exercising his constitutional right of access to the courts."  Jones v. Franze, 697 F.3d 801, 803 (7th Cir. 1983).  There is no independent constitutional right to photocopy; therefore, the "reasonableness of a prison's photocopy policy becomes relevant only after the prisoner has shown that the policy is impeding" access to the courts.  Id. at 803.

As discussed above, plaintiff attempted to obtain certiorari review of a prison disciplinary action, but his petition was dismissed as untimely.  His initial petition, which was timely, was rejected because he failed to submit the proper filing fee and to attach certain documents.  Thus, even if defendants had provided the copies plaintiff wanted, the petition would still have been dismissed.

In any event, plaintiff has not shown that any of the named defendants were personally responsible for making copies.  Rather, he contends that they are liable due to their participation in the ICRS.  But there is no evidence that any named defendant personally and intentionally ratified any unconstitutional action pertaining to plaintiff's right to receive copies necessary for a court action.  Therefore, this claim must be dismissed.[7]

---

[7]In conclusion, I note that all of plaintiff's claims of interference suffer from one insurmountable flaw: his petition was dismissed because he failed to include the correct

### E.    First Amendment Claim

Finally, plaintiff alleges that his free exercise of religion rights were violated when defendants disapproved his order for a Bible.  Defendants contend that the denial of plaintiff's Bible request by non-party Capt. Waltz was a mistake, and that defendants acted reasonably in acting to correct the mistake.

It is well-established that prisoners do not forfeit all constitutional protections by reason of their confinement, including the right to freely exercise their religious beliefs. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987).  However, their rights may be restricted in light of valid penological interests, such as deterrence of crime, rehabilitation of prisoners and institutional security.  Id.; see also Canedy v. Boardman, 91 F.3d 30, 33 (7th Cir. 1996); Johnson-Bey v. Lane, 863 F.2d 1308, 1310 (7th Cir 1988).  "Moreover, an inmate is not entitled to follow every aspect of his religion; the prison may restrict the inmate's practices if its legitimate penological interests outweigh the prisoner's religious interests."  Kaufman v. McCaughtry, 419 F.3d 678, 683 (7th Cir. 2005).  "A prisoner's right to freely exercise his religious beliefs does not depend upon his ability to pursue each and every aspect of the practice of his religion."  Canedy, 91 F.3d at 33 (citing O'Lone, 482 U.S. at 352).  Rather, the prison need only allow some form of religious observance.  See O'Lone, 482 U.S. at 352.

_____

filing fee.  He presents no evidence that any named plaintiff was responsible for this blunder.  Finally, having decided plaintiff's habeas corpus action, which was based on the same claims plaintiff attempted to raise in the certiorari petition, and even in light of the different standard of review applicable to habeas actions, it seems clear that plaintiff had no meritorious claims for review.  See Davis v. Milwaukee County, 225 F. Supp. 2d 967, 972 (E.D. Wis. 2002) (noting that in order to prevail on access to courts claim plaintiff must show that claim he was impeded in bringing had potential merit).

In the present case, it is clear that plaintiff cannot show that prison officials have prohibited his free exercise of religion. Defendants admit that Waltz made a mistake when he denied plaintiff's request for a Bible because he thought it was a request for a book. (Beck Aff. ¶ 64, Bett Aff. ¶ 77.) But, even assuming that this slight rises to the level of a constitutional violation,[8] Walz is not a party to this action. Further, there is no DCI regulation prohibiting prisoners from acquiring Bibles, and upon discovering Walz's mistake prison officials allowed plaintiff to order a Bible and explicitly instructed him to file another disbursement request in order to obtain a Bible. (Beck Aff. Ex. H at 4.) Plaintiff claims that his request was denied as part of a continuous cover-up, however he provides no evidence to support his claim. "It is well-settled that conclusory allegations . . . without support in the record, do not create a triable issue of fact." Hall v. Bodine Elec. Co., 276 F.3d 345, 354 (7th Cir. 2002). Accordingly, this claim must be dismissed.

## V. CONCLUSION

THEREFORE, IT IS ORDERED that defendants' motion for summary judgment (Docket # 27) is **GRANTED**, and this case is **DISMISSED**.

Dated at Milwaukee, Wisconsin, this 30 day of September, 2005.


/s_____
LYNN ADELMAN
District Judge

---

[8]The cases suggest that it does not. See, e.g., Tarpley v. Allen County, 312 F.3d 895, 899 (7th Cir. 2002) (holding that prison need not allow inmates to possess religious books as opposed to borrowing them).

26